UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROBIN MURPHY, ET AL.                          CIVIL ACTION

VERSUS                                        NO.  15-5566

ALCATEL-LUCENT USA INC., ET AL.               SECTION "N"  (5)

## ORDER AND REASONS

Presently before the Court is the motion to remand (Rec. Doc. 7) filed by Plaintiff, Carolyn Lanque Murphy ("Plaintiff"), individually and on behalf of her late husband, Robin Murphy.  As stated herein, **IT IS ORDERED** that the motion is **DENIED**.

## BACKGROUND

In April 2012, Robin Murphy, a Louisiana citizen, filed a petition for damages in state court premised upon his alleged occupational exposure to asbestos-containing materials, in the mid-1960's and 1970's, while working as an electronic technician at Southern Bell Telephone and as a carpenter helper for Roland Bourgeois.   Removing defendant, Rohm and Haas Company ("R&H") was not initially named as a defendant in Murphy's suit. Supplier defendants Eagle, Inc. ("Eagle"), the McCarty Corporation ("McCarty"), Reilly-Benton Company, Inc. ("Reilly-Benton") and Taylor-Seidenbach, Inc. ("Taylor-Seidenbach") (collectively,"Non-Diverse Defendants"), all Louisiana citizens, however, were named in the original petition as defendants.  Murphy alleged that

the fault of each of the various defendants "contributed . . . to [his] exposure to asbestos and subsequent contraction of mesothelioma."[1]

Murphy was deposed over the course of three separate days in September and October 2012. Thereafter, in the summer of 2014, he dismissed the Non-Diverse Defendants from his lawsuit without prejudice. Following Murphy's death on August 14, 2014, Plaintiff, also a Louisiana citizen, filed a supplemental and amending petition ("First Supplemental Petition") for damages, on or about August 14, 2015, alleging that she is the surviving spouse of Robin Murphy and that he had passed away as a consequence of his asbestos exposure.[2] She asserted wrongful death and survival claims against twenty-six (26) separate and diverse defendants, including removing defendant, R&H, and re-named as defendants the Non-Diverse Defendants that her late husband had previously dismissed without prejudice.[3]

Following its receipt of service of the First Supplemental Petition, in September 2015, R&H filed exceptions in state court, as well as a motion, and proposed order, to set the exceptions for hearing. Six days later, on October 29, 2015, however, R&H removed the state court suit to this Court.[4] Plaintiff's motion to remand now before the Court, along with the parties' several supporting and opposing memoranda, followed.

In seeking remand, Plaintiff contends that the proper joinder of the Non-Diverse Defendants in this action precludes complete diversity of citizenship such that the matter must be

---

[1]     *See* Petition, Rec. Doc. 1-2, ¶4.

[2]     *See* "Plaintiff's First Supplement and Amending Petition for Damages", Rec. Doc. 1-3.

[3]     *Id.*

[4]     *See* Notice of Removal, Rec. Doc. 1.

remanded to state court.  Plaintiff further urges, in the alternative, that R&H waived any right it had

to federal court removal by filing exceptions to Plaintiff's First Supplemental Petition, along with

a motion and proposed order to have the exceptions set for hearing, in state court.   In opposition,

R&H argues that the Non-Diverse Defendants are not properly joined and, thus, their Louisiana

citizenship should not be considered.[5]  Given that, R&H maintains that diversity is complete, for

purposes of the subject matter jurisdiction provided by 28 U.S.C. §1332, such that Plaintiffs' request

for remand should be denied.  R&H likewise disputes that it waived its right to federal court removal

by virtue of its pre-removal conduct in state court.

## LAW AND ANALYSIS

The federal court subject matter jurisdiction provided by 28 U.S.C. §1332 is present

only when complete diversity of citizenship exists between the plaintiff(s) and all properly joined

defendants, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §1332.  "When a

nondiverse party is properly joined as a defendant, no defendant may remove the case under 28

U.S.C. § 1332."  *Pitman v. Crane Co.*, Civil Action No. 13-83, 2013 WL 1403326 *1 (E.D. La. Apr.

5, 2013) (Vance, J.).  Removal is available, however, if the removing defendant shows that the

nondiverse party was joined improperly.  *See, e.g., Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220,

222 (5th Cir. 2003).  Although the Court must remand a removed action to state court if, at any time

before final judgment, it appears that subject matter jurisdiction is lacking, the Court's jurisdiction

is fixed as of the time of removal.  28 U.S.C. § 1447(c);  *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456

(5th Cir.1996).

---

[5]     The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder."  *See, e.g.,*
*Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  Nevertheless, the term "fraudulent
joinder" is still frequently used.

"The burden of proving [improper] joinder is a heavy one" that is borne by the removing party. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir. 1983). Specifically, the removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333 (5th Cir. 2004) (citation omitted). The Fifth Circuit has historically used different phrases in describing the standard for improper (fraudulent) joinder. Whether using the phrase "no possibility of recovery" or "no reasonable basis for the plaintiff to establish liability," however, the essential standard has been the same. *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* the Fifth Circuit explained and clarified the standard:

> [T]he court determines whether the [plaintiff] has any possibility of recovery against the party whose joinder is questioned. If there is a arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical.

313 F.3d 305, 312 (5th Cir. 2002) (internal citation and quotations omitted). *See also Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) ("This means that there must be a reasonable possibility of recovery, not merely a theoretical one.").

This determination may be made in one of two ways. "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood,* 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* In some cases, however, the plaintiff will have stated a claim but "misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* "In such cases, the district court may, in its

discretion, pierce the pleadings and conduct a summary inquiry" to determine whether such facts exist that preclude a plaintiff's recovery against non-diverse defendant. *Id.* at 573-74; *see also Campbell*, 509 F.3d at 669 ("the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim"). "Examples of such facts include 'the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true.'" *See Landry v. Columbia Cas. Co.,* Civil Action No. 14-220, 2014 WL 4674797, *2 (E.D. La. Sept. 18, 2014) (Milazzo, J.) (quoting *Smallwood*, 385 F.3d at 573, n. 12)).

    While the Court is permitted to "pierce the pleadings and consider summary judgment-type evidence in the record" in making this determination, it "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *McKee*, 358 F.3d at 334 (citing *Travis*, 326 F.3d at 648-49.)  Thus, "although the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *McKee*, 358 F.3d at 334.  Further, any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor.  *Id.*  Finally, the Court "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant."  *Id.* at 334-36 ("KCS had not shown [applicable] law precluded all of McKee's claims . . . but only that McKee had yet  to develop her claims to the extent that . . . she would be able to prevail . . . .); *see also Travis*, 326 F.3d at 650-51 (simply pointing to the plaintiff's lack of evidence at stage of the case where discovery was ongoing

was insufficient to show that there was no possibility for the plaintiff to establish liability at trial); *Davidson v. Georgia Pacific, L.L.C.,* Civil Action No. 12-1463, 2013 WL 1768015, *5 (W.D. La. Apr. 24, 2013) (Stagg, J.) (in-state defendants improperly joined where parties had completed eleven months of discovery in prior, nearly identical, state court suit but evidence remained insufficient to "move plaintiffs possibility of recovery out of the theoretical realm").

Referencing the foregoing legal principles, R&H argues Plaintiff lacks the requisite reasonable, rather than merely theoretical, possibility of recovery against the Non-Diverse Defendants and, thus, has improperly joined them.  To support this assertion, R&H asserts that "Murphy never identified any of the four non-diverse Defendants, much less implicated them in his purported asbestos exposure" at any "time during his deposition testimony," which was given over the course of 3 separate days, consisted of more than 500 pages of testimony, and commenced with Murphy's counsel "directing the first 200 pages of that testimony."[6]  R&H also relies on Murphy's subsequent dismissal without prejudice of the Non-Diverse Defendants, arguing that "Robin Murphy, himself, found it appropriate to dismiss" them.[7]

Disagreeing with R&H's position, Plaintiff maintains that "a closer review of decedent's deposition shows that he did work with asbestos-containing materials that Plaintiff contends were supplied by at least one of the Non-Diverse Defendants" – McCarty Corporation.[8] Specifically, Plaintiff points to Murphy's deposition reference to roofers' use of Johns-Manville

---

[6]     *See* Rec. Doc. 16, pp. 11 and 12.

[7]     *See* Rec. Doc. 28, p. 7.

[8]     *See* Rec. Doc. 26, p. 5.

shingles during the course of his employment,[9] and additionally asserts that McCarty "distributed products that were manufactured by Johns-Manville in the Baton Rouge and New Orleans area through the late 1970's" and "[i]n the mid-1950's became the exclusive distributor" in the area.[10] With respect to Murphy's work for Southern Bell Telephone from the mid-1960's to the mid-1990's, Plaintiff references provisions of "Bell System Practices" (unauthenticated) documentation purportedly approving Johns-Manville ceramic fiber for cable hole sheathing, and requiring use of Johns-Manville asbestos composition panels. Based on that documentation, and the assertion that "McCarty was the exclusive distributor of Johns-Mansville products" in the area at that time, Plaintiff argues that "Mr. Murphy or Southern Bell Telephone most likely obtained Johns-Manville products from McCarty."[11] Plaintiff additionally rejects the notion that Murphy's prior dismissal of the four Non-Diverse Defendants should be given any weight, asserting that they were re-named following "further investigation by her new counsel."[12]

Having carefully considered all of the parties' submissions and applicable legal principles, the Court is not satisfied, on the showing made, that a factual link sufficient to render Plaintiff's chances of recovery against McCarty reasonable, rather than merely theoretical, exists between McCarty and Murphy's alleged asbestos exposure. In reaching this conclusion, the Court notes, as do R&H and Defendant Rockwell Automation, Inc., in their memoranda, that the deposition testimony on which Plaintiff relies does not explain the parameters of McCarty's

---

[9]      *Id*. at p. 5.

[10]     *Id.* at pp. 5 and 6.

[11]     *Id*. at p. 6.

[12]     *Id.* at p. 4.

"exclusive distributorship program," or that McCarty was the *only* distributor in the area of Johns-Manville's many different products.[13]   Furthermore, the supplemental excerpt of James Godwin's deposition testimony provided by Rockwell indicates that McCarty distributed only *insulation* products from Johns-Manville during the pertinent time.[14]   Specifically, Mr. Godwin states: "We handled only the insulation line, basically the Thermobestos products trade name, pipe covering, and blocks."[15]   Thus, on the showing made, there is insufficient evidence linking McCarty with the roofing and wire products utilized at Murphy's worksites.

Lastly, the Court additionally notes that this matter is not one in which Plaintiff has had little opportunity to conduct discovery that might provide the necessary evidentiary support for her claims against the Non-Diverse Defendants.  To the contrary, Murphy dismissed the Non-Diverse Defendants more than a year and a half after his deposition and more than two years after the filing of his suit.   Additionally, despite Plaintiff's new counsel's "further investigation" purportedly warranting the Non-Diverse Defendants being re-named as defendants, in 2015, the First Supplemental Petition alleges no new facts supporting their liability.  Finally, neither of Plaintiff's supporting memoranda includes a recitation of intended future discovery likely to yield pertinent probative evidence.   Nor has Plaintiff sought to further supplement her prior submissions, during the time that her motion to remand has been pending, relative to the requisite link between McCarty and the particular asbestos products utilized on Murphy's worksites.  For these reasons,  the Court is not convinced  that Plaintiff simply has not yet had a chance to "develop her claims" such that

---

[13]        *See* Rec. Docs. 28 and 30.

[14]        *See* Rec. Doc. 30, p. 2, and Rec. Doc. 30-1, pp. 2 of 3 and 3 of 3.

[15]        *Id.*

remand is warranted.  *Cf. Davidson*, 2013 WL 1768015, *3-4 (noting eleven months of discovery taken in prior case in denying remand).

The Court additionally rejects Plaintiff's contention that R&H waived its right of removal simply by filing exceptions to the petitions, along with a motion and proposed order to have the exceptions set for hearing, in state court.  In general, "[a] waiver of the right to remove must be clear and unequivocal."  Furthermore, as explained in *Bourdier v. Diamond M. Odeco Drilling, Inc*., Civil Action No. 93-3667, 1994 WL 25526, *1 (E.D. La. Jan. 24, 1994) (Duplantier, J.), "waiver of the right of removal is intended to preclude a defendant from 'experimenting' with a case in state court prior to removing it to federal court, where the defendant then has a second opportunity at re-litigating any adverse decisions of the state court." *Id.* "Generally, however, the filing in state court of a pleading which asserts defenses, without further action on the part of the defendant resulting in a decision on the merits of such defenses, does not constitute a waiver of removal." *Id.* Under the present circumstances, the Court cannot agree that the mere addition of a request for a hearing date for exceptions qualifies as prohibited pre-removal "testing of [state court] waters."

## CONCLUSION

For the foregoing reasons, the Court, on the showing made, finds the Non-Diverse Defendants to have been improperly joined such that their Louisiana citizenship should not be considered for purposes of establishing subject matter jurisdiction under 28 U.S.C. §1332. Accordingly, because the other defendants are diverse from Plaintiff in citizenship, Plaintiff's motion to remand is denied.

New Orleans, Louisiana, this 7th day of June 2016.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

10