IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAROLYN MURPHY, INDIVIDUALLY §<br>AND AS EXECUTRIX OF THE ESTATE §<br>OF ROBIN MURPHY, SR., IRVIN §<br>MURPHY, KELLY RICKS, ROBIN §<br>MURPHY, JR., and APRIL ANN IRONS, §<br>§<br>PLAINTIFFS, §<br>§<br>v. §<br>§<br>ALCATEL-LUCENT USA INC., et al. §<br>§<br>DEFENDANTS. §<br>§ | CIVIL ACTION NO. 2:15-cv-05566<br><br>SECTION "N" (5)<br><br>DISTRICT JUDGE:<br>KURT D. ENGELHARDT<br><br>MAGISTRATE JUDGE:<br>MICHAEL NORTH |

**ALCATEL LUCENT USA INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE THE TESTIMONY OF
JOHN C. MADDOX, M.D. AND FRANK PARKER, CIH**

Defendant Alcatel-Lucent USA Inc. (hereinafter "Alcatel-Lucent" or Defendant"),

respectfully requests that its Motion to Exclude the Testimony of John C. Maddox, M.D. and Frank

Parker, CIH be granted pursuant to Federal Rule of Evidence 702 and the standards articulated in

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Alternatively, Alcatel-Lucent

requests a *Daubert* hearing to determine the admissibility of the testimony.  In support of its Motion,

Alcatel-Lucent states as follows:

**I.      Introduction**

*Daubert* and Rule 702 stand for the fundamental principle that unreliable and scientifically

bankrupt opinion testimony cannot be peddled to jurors by expert witnesses.  Instead, expert

testimony should be based on sound foundations and legitimate scientific principles.  Two sets of

opinions offered by Plaintiffs' experts violate those basic tenants and should be excluded: (1) Mr.

Parker's opinions about which products contained asbestos, and what "exposure dose" Mr. Murphy

1

experienced, and (2) Dr. Maddox's "cumulative exposure" causation opinion - - an opinion that has previously been rejected by this Court.[1]

Put bluntly, Mr. Parker's opinion is quintessential junk science. He concocted an alleged asbestos exposure assessment by erroneously assuming some products had asbestos, while at the same time ignoring the most obvious and substantial exposure Mr. Murphy sustained throughout much of his life. First, Mr. Parker assumed that all the fire-retardant products Mr. Murphy discussed contained asbestos.[2] Mr. Parker maintained that opinion despite the production of documents by Alcatel-Lucent and other defendants in this matter that affirmatively demonstrate none of the products Mr. Murphy allegedly used contained asbestos. More incredibly, Mr. Parker completely failed to consider Mr. Murphy's extensive environmental exposures to asbestos during his years living in the Westbank neighborhood of New Orleans. Mr. Murphy lived on or near properties that were contaminated with asbestos-containing fill used in yards, driveways, sidewalks, and even his childhood basketball court. The Westbank neighborhood is the site of one of the worst mesothelioma clusters in the United States because of the environmental exposures attributable to the asbestos-containing fill spread throughout the community from the Johns-Manville plant. Despite being well-aware of the environmental catastrophe of Westbank exposures Mr. Parker, inexplicably, did not consider any information about Mr. Murphy's Westbank exposures:

> Q.    You haven't done any investigation to determine whether any of the addresses where Mr. Murphy resided were locations that have been identified as to where that material was located?
>
> **A.    I have not. I suspect if it did, though, I would have heard about it by now.**[3]

---

[1] See *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015).

[2] *See generally* **Ex. A**, Frank Parker's Report, at 1–2.

[3] *See* **Ex. C**, Mr. Parker's Dep. Tr. at 105:19 - 105:24.

2

Mr. Parker's head-in-the-sand approach may be convenient for achieving the litigation goals of his clients, but it is not legitimate industrial hygiene science. Mr. Parker's opinion about Mr. Murphy's asbestos exposure simply assumed occupational exposure from products that have been affirmatively proven to not contain asbestos (and thus created no exposure), and ignored the well-known, obvious, and epidemiologically proven environmental Westbank exposures. Courts regularly exclude expert witnesses for failing to account for or even consider relevant exposures in asbestos causation opinions. Accordingly, Mr. Parker's opinions should be excluded. Alternatively, Alcatel-Lucent respectfully requests a *Daubert* hearing so the Court can determine the admissibility of the opinions at issue.

Dr. Maddox's opinions suffer from two fatal flaws.  First, Dr. Maddox relies upon Mr. Parker's industrial hygiene exposure assessment for his causation opinion.  Mr. Parker's junk science cannot be legitimized through Dr. Maddox's testimony. Mr. Parker's failure to provide competent testimony has prevented Plaintiffs' medical causation expert, Dr. Maddox, from possessing valid exposure testimony necessary to generate a causation opinion. Thus, any causation opinion generated by Dr. Maddox is unacceptable under the *Daubert* standard.  Additionally, despite his recent proclamations to the contrary, Dr. Maddox is a strict adherent to the unscientific "every exposure" or "cumulative exposure" theory, which has been roundly rejected by state and federal courts, under the *Daubert* standard, across the country, including in Louisiana.  More than thirty federal and state courts across the country have, since 2005, excluded this opinion and concluded it is not scientifically reliable - - most recently the Seventh Circuit.[4]  This "cumulative" or "any exposure" opinion offers a jury no scientific basis on which to decide whether Plaintiff had

---

[4] *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017).

an exposure to any defendant's product sufficient to cause his injury and does not assist in applying the legal standard of causation.

Alcatel-Lucent therefore requests that this Court, in its gatekeeping role under Rule 702 and *Daubert*, exclude the "any exposure" opinion of causation offered by Plaintiffs' experts. The "any exposure" opinion is a litigation-generated "one sizes fits all" approach that allows the Plaintiffs' experts to provide causation opinions that will inculpate whichever defendant remains at trial. Accordingly, the Court should exclude Dr. Maddox from testifying as to those matters in this case. Alternatively, Alcatel-Lucent respectfully requests a *Daubert* hearing so the Court can determine the admissibility of the opinions at issue.

## II.    <u>Legal Standard</u>

Federal Rule of Evidence 702 and the Supreme Court's seminal cases, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), and *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), govern the admissibility of expert witness testimony. By its express terms, Rule 702 requires that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[5]

*Daubert* commands the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements are satisfied before allowing the finder of fact to hear expert witness testimony.[6] Under *Daubert*, the district court has broad discretion in determining the admissibility of expert

---

[5] Fed.R.Evid. 702.

[6] *Daubert*, 509 U.S. at 589; *see also Kumho Tire*, 526 U.S. at 147-49.

witness testimony.[7] The proponent of the expert, however, bears the burden of demonstrating that the expert witness testimony satisfies the standard.[8]

Before admitting expert witness testimony, the court employs a three-part review: 1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; 2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and 3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue.[9] The purpose of the *Daubert* inquiry is to scrutinize the proposed testimony to determine if the "'proffered expert exercises the same 'intellectual rigor' in the courtroom as does an expert in the relevant field."[10]

Finally, the court should apply Federal Rule of Evidence 403 when reviewing expert witness testimony under the *Daubert* standard and should exercise more control over expert witness testimony than over lay witness testimony, weighing the danger of unfair prejudice, confusion of the issues, or misleading the jury.

## III.   <u>Legal Argument</u>

"Since *Daubert*, [] parties relying on expert evidence have had notice of the *exacting* standards of reliability such evidence must meet."[11]  In toxic tort cases, Louisiana courts have warned that failing to consider every factor related to an asbestos related disease is "so divergent from scientific medical practice as to render [a] methodology unreliable."[12] Here, the testimony of

---

[7] *See Joiner*, 522 U.S. at 142.

[8] *See, e.g., Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 724 (5th Cir. 2009).

[9] *Id.*

[10] *Id. quoting Kumho Tire Co.*, 526 U.S. at 152.

[11] *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (emphasis added).

[12] *See, e.g., Boudreaux v. Bollinger Shipyard*, 197 So. 3d 761, 771 (La. App. 4 Cir. 2016).

Mr. Parker and Dr. Maddox is scientifically unreliable to such an extent that the Court should exclude each of them from testifying.

### A. Mr. Parker's Industrial Hygiene Opinion Lacks Any Foundation and Should Be Excluded Under Federal Rule of Evidence 702 and *Daubert*.

Mr. Parker's opinion and testimony in this matter is deeply flawed - - and accordingly inadmissible - - because it is based upon the unsupported assumptions that the products Mr. Murphy worked with at BellSouth central offices contained asbestos. The facts, however, are that none of the products identified by Mr. Murphy contained asbestos, as demonstrated by specifications and other documents produced by Alcatel-Lucent and other defendants. Mr. Parker failed to adequately investigate these products or perform even a cursory review of documents produced in this case. Instead, Mr. Parker simply assumed the products contained asbestos so he could draft a report that supported Plaintiffs' claims. Mr. Parker's opinions do not satisfy Rule 702 because they merely reiterate Mr. Murphy's foundationless assumption that any fire-retardant product contained asbestos.[13]

Mr. Parker admitted that he failed to perform even a cursory review of the specifications for the pillows which definitively show that they did not contain asbestos.[14] Likewise, Mr. Parker failed to review the specifications for the gloves or blankets mentioned during Mr. Murphy's deposition.[15] Mr. Parker also admitted that never tested any of these products to determine whether they may have contained asbestos.[16] While Mr. Parker failed to review specifications for these products or testing results, each of these was available to him. Mr. Parker failed to review these critically

---

[13] *Compare* **Ex. B**, Vol. I of Mr. Murphy's Dep. Tr. at 305:15–23 and Ex. A, Frank Parker's Report, at 1.

[14] **Ex. C**, Mr. Parker's Dep. Tr. at 64:13–65:8; 132:8 –12 ("I have not seen a document that identifies the specifications for the pillows that Mr. Murphy described, or identified.").

[15] *Id.* at 77:12–16; 90:19–23.

[16] *Id.* at 72:24–73:6 ("nobody sampled them and analyzed" the products at issue.); 76:19–24.

important documents because they would have contradicted his preordained conclusion that these products contained asbestos.  Compounding his errors, Mr. Parker opined that the blue pillows contained crocidolite asbestos, a more toxicologically potent type of asbestos.[17] Mr. Parker based his crocidolite claim entirely on the blue exterior fabric of the bag.[18]

Mr. Parker neither examined relevant documents nor investigated the products or exposures at issue in this case. His opinion is completely unsupported by evidence, based on assumptions lacking any evidentiary foundation, and his reasoning and methodology underlying his testimony is completely unreliable. Worse than simply unsupported guesswork, Mr. Parker's opinions are based on willful ignorance of the facts.  Rule 702 and *Daubert* demand more.

**B.    Dr. Maddox Should Be Excluded Because His Causation Opinion Is Not Reliable and Not Based on Science.**

1.    Dr. Maddox's Causation Opinion Ignores the Fundamental Principle of Toxicology—Establishing the Dose Necessary to Cause Disease.

The science of toxicology rests on the bedrock principle that "the dose makes the poison."[19] In fact, "[d]ose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect."[20]  The "any exposure" theory, however, disregards this most important principle of toxicology and is not consistent with the standards for legitimate expert testimony.

Disease occurs when those exposures reach a "threshold" level that overwhelms our natural defenses.  Aspirin, water, sunlight, or even known "poisons," such as arsenic, are harmful only at high enough doses and are harmless—or even beneficial—at lower doses.  For any given response,

---

[17] **Ex. A** at 1.

[18] **Ex. C** at 78:19–79:15.

[19] Federal Judicial Center, *Reference Manual on Scientific Evidence* 403, 475, 603, 651 (3d ed. 2011).

[20] David Eaton, *Scientific Judgment and Toxic Torts: A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Poly 5 (2003) ("*Toxicology for Judges*").

there is a dose at which the effect begins to appear and a dose below which it does not.  The dose matters.  This principle of "dose-response" holds true for carcinogens, such as asbestos, just as much as it does for any other toxins:

> Most chemicals that have been identified to have "cancer-causing" potential (carcinogens) do so only following long-term, repeated exposure for many years.  Single exposures or even repeated exposures for relatively short periods of time (e.g., weeks or months) generally have little effect on the risk of cancer, unless the exposure was remarkably high and associated with other toxic effects.[21]

Asbestos, likewise, is not a known carcinogen until levels exceed human tolerance.[22]  The most apparent evidence is the background exposures we all receive in our entire lives.  In fact, among the general population in this country, the average person is exposed to roughly 100 million asbestos fibers during his or her lifetime.[23]  Every exposure we encounter, however, is not a cause of asbestos disease.  Minor asbestos exposures, while the subject of frequent regulatory comment and action, have never appeared in epidemiology studies as a significant cause of disease.

As the Louisiana's Fourth Circuit Court of Appeals recently explained, the proper causation analysis begins with a measurement, or at least a reasonable estimate, of the likely dose received by plaintiff.[24]  Typically, a causation expert, generally an industrial hygienist, compares the dose (without speculation) to the dose that scientific studies confirm to cause the disease, typically demonstrated in a series of epidemiological studies of various exposed populations.[25]

---

[21] *Toxicology for Judges* at 9.

[22] *Reference Manual on Scientific Evidence* at 603, 635.

[23] National Research Council, Committee on Non-Occupational Health Risks of Asbestos Formed Fibers, *Asbestiform Fibers Non-Occupational Health Risks* 62 (1984).

[24] *Boudreaux v. Bollinger Shipyard*, 197 So. 3d 761, 765 (La. App. 4 Cir. 2016) (affirming the exclusion of a pathologist's expert testimony who formed "his causation opinion without any underlying evidence regarding the dosage of asbestos received by [Plaintiff] via occupational exposure.)

[25] *Id.*

Under Rule 702 and *Daubert*, it is incumbent on causation experts to prove the dose that is a potential cause, under scientific studies, and not merely presume that any amount of occupational exposure is sufficient.[26]  Like the causation expert in *Boudreaux*, Dr. Maddox and any exposure theorists cannot identify any scientific studies that confirm the danger of asbestos exposure above what they call "background." Instead, Dr. Maddox merely opines that "you cannot exclude [any exposures and] you should include them as part of [Mr. Murphy's] cumulative exposure to asbestos."[27]  The opinion is designed to be able to implicate *any* exposure, from *any* defendant, who remains at trial - - it is simply an opinion ginned up for litigation purposes.

In toxic tort cases, courts have consistently held that a causation expert must offer proof of an actual dose under *Daubert* and Rule 702.[28]  It is not enough to opine that a plaintiff was "exposed."  "Dose" must be distinguished from "exposure."  The fact of exposure, by itself, says virtually nothing about the likelihood that the exposure caused a plaintiff's disease.[29]  Dr. Maddox's testimony typifies the misuse of this "any exposure" or "cumulative exposure" opinion in both his

---

[26] *Boudreaux*, 197 So. 3d at 765.

[27] **Ex. F**, Dr. Maddox's Dep. Tr. at 139:11–16.

[28] *See* e.g., *In re Bextra & Celebrex Marketing Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1174-75 (N.D. Cal. 2007) (studies did not show that dose at issue could cause the alleged injury; "The Court finds that dose matters."); *McLain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) ("In toxic tort cases, [s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that [the] plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden."); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir.) (upholding exclusion of expert witness who "made no attempt to determine what amount of PCB exposure"), *cert. denied*, 534 U.S. 822 (2001); *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) ("[A] plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover"); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278 (5th Cir. 1998), *cert. denied*, 526 U.S. 1064 (1999) ("Because he had no accurate information on the level of Moore's exposure to the fumes, Dr. Jenkins necessarily had no support for the opinion that the level of chemicals to which Moore was exposed caused RADS."); *Abuan v. General Elec. Co.*, 3 F.3d 329, 332-34 (9th Cir. 1993) ("In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances"), *cert. denied*, 510 U.S. 1116 (U.S. 1994).

[29] *See e.g., Moeller v. Garlock Sealing Techns., Inc.*, 660 F.3d 950, 955 (6th Cir. 2011) ("saying that exposure to Garlock gaskets was a substantial cause of Robert's mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean's volume").

reports in this case,[30] and in his testimony.  Dr. Maddox states that Mr. Murphy was exposed to asbestos while working at BellSouth, but relies entirely on Mr. Parker's unsupported report for this conclusion.[31] Dr. Maddox states that "the risk of developing mesothelioma is a dose-response process, and that the mesothelioma is the cumulative result of the exposures to asbestos that a person receives."[32] According to Dr. Maddox, "the patient's cumulative asbestos exposures caused this lethal malignant pleural mesothelioma."[33] "Further, within reasonable medical probability, the component exposures described above were significant and substantial components of his cumulative asbestos exposure, which is what caused this mesothelioma."[34]

However, Dr. Maddox never considered the dose, duration, or source of plaintiff's alleged exposure to asbestos—whether the exposure was for five minutes or forty years, or to a high dose or low dose, made no difference to him. In fact, Dr. Maddox acknowledged that Mr. Parker never performed a dose calculation for any of the products at issue in this case.  Astoundingly, Dr. Maddox reached his cumulative exposure opinion in this case based solely on the alleged exposure assumption provided to him, in 2013, by the Plaintiff's prior counsel without ever considering the Westbank exposure history.[35]  This approach ignores fundamental toxicology principles and is without scientific foundation.  Dr. Maddox pretends to conduct an analysis based on the exposure history, but that analysis is illusory - - Dr. Maddox's opinion does not change with the facts:

---

[30] The April 10, 2013 report is attached as **Ex. D**, and the October 18, 2017 report is attached as **Ex. E**.

[31] **Ex. F** at 55:11–56:21; 69:5–18.

[32] *Id.* at 38:1–5.

[33] **Ex. D** at 2.

[34] **Ex. E** at 26.

[35] **Ex. D** at 2.

Q.      Now, ultimately the opinion that you give in the
        April 2013 report about the patient's cumulative asbestos exposure causing
        the malignant pleural mesothelioma is the same ultimate opinion
        that you gave in your October 18, 2017, affidavit report, correct?

**A.      Yes, sir.**[36]

2.      The Any Exposure Opinion Is Speculation, Not Scientific Analysis.

The any exposure opinion stands in sharp contrast to an appropriate scientific causation analysis.  Indeed, Dr. Maddox's opinion cannot be said to have applied any scientific methodology at all: it was based entirely on the untested assumption that any exposure to asbestos, regardless of dose, contributes in a meaningful way to the development of mesothelioma. Under *Daubert* and Rule 702, the Supreme Court and Louisiana courts prohibit litigation experts, like Dr. Maddox, who testify to methods that are not "based on scientifically reliable principles and methods, and as such has been rejected by the jurisprudence."[37]

Courts nationwide have recognized that the any exposure opinion has no grounding in the peer-reviewed scientific literature, nor has the opinion been adequately and repeatedly tested for reliability.  For instance, the District Court of Utah rejected this opinion as unproven:

> This court agrees with the general assessment of these various state and federal courts that the every exposure theory does not qualify as admissible expert testimony.  The *Butler* court summed up expert testimony regarding the every exposure theory accurately by stating that an expert's "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis."[38]

Such an unproven hypothesis is not a permissible basis for expert testimony because a medical expert's ultimate opinion must be grounded in the scientific process and may not be merely

---

[36] **Ex. F** at 128:18 – 128:24.

[37] *Oddo v. Asbestos Corp.*, 173 So. 3d 1192, 1209 (La. App. 4th Cir. 2015) ("At the conclusion of the Daubert hearing, the trial court agreed that this theory [the each and every exposure theory] was not generally accepted as reliable.")

[38] *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *5 (D. Utah Jan. 18, 2013) (quoting *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 552 (Ga. Ct. App. 2011)).

a subjective belief or unsupported conjecture."[39] The opinion is simply a made-for-litigation construct designed to allow the expert to implicate the alleged exposures of whatever defendant(s) remain at trial.

    3.    Courts in Louisiana and Across the Nation Have Rejected the Any Exposure Opinion.

    In the last few years, courts across the nation have carefully examined the "any exposure" theory and have routinely rejected it as unscientific.[40]  The courts rejecting this opinion include the Sixth Circuit Court of Appeals (three times), the Seventh Circuit Court of Appeals, at least eight federal district courts, the highest courts of Texas, New York, Pennsylvania, and Virginia, and trial and state appellate courts in Texas, Georgia, Florida, Delaware, Ohio, Mississippi, and Pennsylvania, among others.[41]

---

[39] *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009) (affirming district court's exclusion of testimony regarding plaintiff's the each and every exposure theory).

[40] *See generally* David C. Landin et al., *Lessons Learned from the Front Lines: A Trial Court Checklist for Promoting Order and Sound Public Policy in Asbestos Litigation*, 16 Brook. J.L. & Pol'y, 637-641 (2008) (collecting cases).

[41] Federal court cases include *Pluck v. B.P. Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011); *Moeller*, 660 F.3d at 950; *Martin*, 561 F.3d at 439; *Anderson v. Ford Motor Co.*, No. 06-CV-741, 2013 WL 3179497 (D. Utah June 24, 2013); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-CV-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013); *Smith*, 2013 WL 214378, at *5; *Wannall v. Honeywell Int'l, Inc.*, No. 10-cv-351, 2013 WL 1966060 (D.D.C. May 14, 2013); *Bartel*, 316 F. Supp. 2d at 611; *Newkirk v. ConAgra Foods, Inc*., 727 F. Supp. 2d 1006 (E.D. Wash. 2010), *aff'd*, 438 Fed. App'x 607 (9th Cir. 2011); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142 (E.D. Wash. 2009); *In re W.R. Grace & Co.*, 355 B.R. 462 (Bankr. D. Del. 2006), *appeal denied*, 2007 WL 1074094 (D. Del. Mar. 26, 2007); *see also Barabin v. AstenJohnson, Inc.*, 700 F.3d 428 (9th Cir. 2012) (reversing trial verdict based in part on any exposure opinion due to trial court's inadequate *Daubert* analysis).  State court cases include *Ford Motor Co. v. Boomer*, 2013 WL 119703 (Va. Jan. 10, 2013) (declining to address any exposure opinion directly but requiring plaintiff's experts to "opine as to what level of exposure is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this case were sufficient"); *Betz*, 44 A.3d at 27 (affirming *In re Toxic Substances Cases*, 2006 WL 2404008 (Pa. Ct. Com. Pl. Allegheny County Aug. 17, 2006)); *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216 (Pa. 2007); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007); *Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114 (N.Y. 2006); *Butler v. Union Carbide Corp.*, 712 S.E.2d 537 (Ga. Ct. App. 2011); *Smith v. Kelly-Moore Paint Co., Inc.*, 307 S.W.3d 829 (Tex. Ct. App. 2010); *Georgia-Pacific Corp. v. Stephens*, 239 S.W.3d 304 (Tex. Ct. App. 2007); *Georgia-Pacific Corp. v. Bostic*, 320 S.W.3d 588 (Tex. Ct. App. 2010); *Daly v. Arvinmeritor, Inc.*, 2009 WL 4662280 (Ha. Cir. Ct. Broward County Nov. 30, 2009); *In re Asbestos Litig. (Certain Asbestos Friction Cases Involving Chrysler LLC)*, 2008 WL 4600385 (Pa. Ct. Com. P Phila. County Sept. 24, 2008); *Free*, 2008 WL 728387, at *1 (trial order); *In re Asbestos Litig. (Pena v. Bondex)*, 2007 WL 5994694 (Tex. Dist. Ct. July 18, 2007); *Basile v. American Honda Motor Co., Inc.*, 2007 WL 712049 (Pa. Ct. Com. Pl. Indiana County Feb. 22, 2007*); Brooks v. Stone Architecture, P.A.*, 934 So. 2d 350 (Miss. Ct. App. 2006).

Four Louisiana federal court opinions have also rejected the "any" or "every exposure" theory of causation advanced by Dr. Maddox.[42] In one instance, the Eastern District of Louisiana excluded an expert using Dr. Maddox's causation theory because:

> [It] "is not an acceptable approach for a causation expert to take" and it is "precisely the kind of testimony the Supreme Court in *General Electric Co. v. Joiner* . . . observed as being nothing more than the 'ipse dixit of the expert.'" This kind of blanket specific causation opinion is not based on or tied to the specific facts and circumstances of any of [Plaintiff's] exposures to asbestos and it elides any differences or nuances of duration, concentration, exposure, and the properties of the fibers to which he may have been exposed. The Court is not persuaded that such a one-size-fits-all approach is reliable expert testimony.[43]

Unsurprisingly, the Fifth Circuit has followed similar rationale in excluding experts using the same methodology as Dr. Maddox.[44]

State supreme courts have also rejected the any exposure opinion. The Pennsylvania Supreme Court in a unanimous 53-page decision affirmed the exclusion of testimony based on the any exposure opinion.[45] The *Betz* Court found that the any exposure opinion was in "irreconcilable conflict with itself" because "one cannot simultaneously maintain that a single fiber among millions is substantially causative, while also conceding that a disease is dose responsive." [46] The

---

[42] *See Davidson*, 2014 WL 3510268, vac'd on other grounds, 819 F.3d 758 (5th Cir. 2016); *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628 (E.D. La. 2015); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556 (E.D. La. 2015); *Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2017 WL 876983 (E.D. La., March 6, 2017).

[43] *Comardelle v. Pennsylvania Gen. Ins. Co.*, 76 F. Supp. 3d 628, 634 (E.D. La. 2015) (internal citations omitted).

[44] *See, e.g., Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) ("Dr. Jenkins offered no scientific support for his general theory that exposure to Toluene solution at any level would cause RADS. Because he had no accurate information on the level of Moore's exposure to the fumes, Dr. Jenkins necessarily had no support for the theory that the level of chemicals to which Moore was exposed caused RADS."); *Allen v. Pennsylvania Eng. Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) (no direct evidence of the level of Allen's exposure to a harmful chemical); *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1114–1115 (5th Cir.1991) (en banc), *cert. denied,* 503 U.S. 912 (1992) (expert excluded due to insufficient data regarding the dosage of a harmful substance and the duration of exposure to that substance); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 423 (5th Cir.1987) (concluding that evidence from animal studies is insufficient based in part on the lack of evidence that the plaintiff was exposed to comparable amounts).

[45] *Betz v. Pneumo Abex, LLC*, 44 A.3d 27 (Pa. 2012).

[46] *Id.* at 56.

overwhelming majority of courts have concluded that the any exposure opinion is not reliable expert evidence, and it should be excluded under the exacting standards of Rule 702 and *Daubert*. Alcatel-Lucent respectfully requests the same result in this case.

        4.      The Prejudicial and Misleading Effect of the Any Exposure Opinion Far Outweighs Any Probative Value.

Expert evidence "can be both powerful and quite misleading because of the difficulty in evaluating it."[47] Therefore, district courts should exercise "more control over experts" under Rule 403.[48] The any exposure opinion should be excluded because any probative value is substantially outweighed by the prejudicial effect and their potential for misleading the jury. The opinion seeks to mislead the jury into rendering a verdict based on a theory of causation that is contrary to the applicable law.

As discussed above, *Daubert* expressly rejected the idea that experts are allowed to nullify the legal standard by cloaking their nullification in the form of a "medical opinion." Under this any exposure opinion, however, an expert essentially flips the causation standard and burden of proof, which confuses and misleads the fact finder from the true causation issues in this case. Because "the probative value of such unsupported speculation by [any exposure experts] is substantially outweighed by the danger of unfair prejudice, as well as being confusing, and presenting a danger of misleading the jury," it should be excluded.[49]

        5.      Dr. Maddox Adheres to the "Each and Every" Exposure Theory.

A Georgia trial court's Daubert analysis in 2010 sums Dr. Maddox's testimony up perfectly: "Dr. Maddox easily qualifies as such a 'quintessential expert for hire' not only for the length,

---

[47] *Daubert*, 509 U.S. at 595.

[48] *Id.* (citation omitted).

[49] *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013).

frequency, and the apparent lucrativeness but also the litigation orientation he exhibited in attempting to add a proper empirical basis for his opinion after he had originally stated his sworn opinion and the Court first found that it was inadmissible. This transgressed the scientific rule that the empirical data should lead to the theory, not vice versa . . . . Dr. Maddox's behavior seemed much more consistent with an advocate than a dispassionate scientist/witness."[50]

Perhaps based on the resounding nationwide findings that "each and every" exposure theory is inadmissible as a causation theory, Dr. Maddox has changed the title, but not the substance of his causation methodology. Dr. Maddox now refers to his causation theory as "cumulative exposure," but asserts that this means "[n]ot all [exposures to asbestos] are significant, but they do go together to form a person's cumulative exposure."[51]  Dr. Maddox later admitted that he actually has not changed his opinion regarding the "each and every" exposure theory of causation and still employs it in asbestos litigation:

> Q:    Would you say that you are now changing your causation opinion or it is staying the same?
> A:    **I would say it's staying the same.**
>
> Q:    The methodology for your opinion, is it changed or has it remained the same for the last 10 years?
> A:    **It has remained the same.**[52]

It is apparent that "cumulative" is merely a synonym for "each and every" employed in an effort to avoid being excluded. The Court should reject this unveiled attempt to disguise "each and every exposure" causation testimony and join the legion of courts in Louisiana and around the nation that have rejected Dr. Maddox's unscientific causation theory.

---

[50] *See Butler v. Union Carbide*, Civil Action No. 2008CA114 (Morgan County, GA) June 29, 2010 Order (attached hereto as **Ex. G**).
[51] **Ex. F** at 40:8–19.

[52] *Id.* at 146:9–16.

15

IV.    **Conclusion**

For the foregoing reasons, Alcatel-Lucent respectfully requests that this Court exclude the testimony of Plaintiffs' experts Frank Parker, and Dr. Maddox under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Alternatively, Alcatel-Lucent respectfully requests that the Court conduct a *Daubert* hearing.

Respectfully submitted,

**COSMICH SIMMONS & BROWN, PLLC**

/s/ *Kay B. Baxter*
KAY B. BAXTER (LSBA No. 22938)
FORREST REN WILKES (LSBA No. 22897)
JASON K ELAM (LSBA No. 34533)
GEORGIA NOBLE AINSWORTH (LSBA No. 35022)
ASHLEY ARMOUR EDWARDS (LSBA No. 35470)
MARGARET ADAMS CASEY (LSBA No. 22918)
M. JAMES DEMPSEY (LSBA No. 28822)
JUSTIN R. GLENN (LSBA No. 37696)
650 Poydras Street, Suite 2215
New Orleans, Louisiana 70130
Telephone: (504) 262-0040
Facsimile: (504) 262-0041

*Attorneys for Alcatel-Lucent USA Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have on January 16, 2018, the undersigned counsel served a copy of the foregoing pleading upon all counsel of record through the Eastern District of Louisiana's CM/ECF system.

/s/ Kay B. Baxter
**KAY B. BAXTER**

16